**STANDARD ELECTRICA, S. A.,**
Libellant,

v.

**COLUMBUS LINES, INC. and Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft, Respondents.**

No. 64 Ad. 571.

United States District Court
S. D. New York.

Aug. 17, 1966.

Richard T. Graham, New York City, for libellant; Seymour Simon, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondents; Wharton Poor, R. Glenn Bauer, New York City, of counsel.

### OPINION

McLEAN, District Judge.

This is a suit in admiralty by a consignee of cargo against a carrier for damages for non-delivery of part of the goods. Libellant moves for summary judgment on stipulated facts. The legal issue is the meaning of the word "package" in 46 U.S.C. § 1304(5) which, as far as pertinent, provides:

"Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connec-

tion with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

The goods were "TV Tuners" shipped by ITT Export Corporation from New York to libellant in Rio de Janeiro. The tuners were put up in fibre-board cartons of uniform size 40 to the carton. There were 54 cartons in all. They were packed in the following manner:

Six cartons were placed upon a wooden pallet stacked in three tiers of two cartons each. The bottom tier exactly covered the pallet. Over the top tier was fitted a wooden deck approximately ½ inch thick, of the same width and length as the pallet. Four metal straps were fitted over the top of the wooden deck, down the sides of the cartons and underneath the bottom pallet where their overlapping ends were tightly fastened together with metal seals. Two of these straps ran lengthwise and two crosswise. The bundle thus created was 39 inches long, 33 inches wide and 42 inches high. It weighed 380 pounds. There were nine such bundles, each made up of six cartons.

When the goods were delivered by the shipper to respondent in New York, respondent issued a dock receipt for them. The receipt was on a printed form containing a caption reading: "Particulars Furnished by Shipper of Goods." Under this caption were four columns, headed respectively, "Marks and Numbers," "No. of Pkgs.," "Description of Packages and Goods," and "Gross Weight Pounds." Under these headings, handwritten entries were made as follows: under "Marks and Numbers," was written "SESA 1297 #1/9." Under "No. of Pkgs." appeared "9." Under "Description of Packages and Goods" was written "Palletts TV Tuners." Under "Gross Weight Pounds" appeared "3420."

Below these entries, the dock receipt set forth the following printed legend:

"Received the goods or packages said to contain goods herein mentioned in apparent good order and condition, except as otherwise indicated herein, to be held and transported subject to all the terms contained in the carrier's regular long form of bill of lading as now in use, including all clauses presently being stamped or endorsed thereon, all of which shall be deemed to be incorporated herein. Copies of such bill of lading and clauses may be obtained from the carrier on request and may be inspected at any of its offices. Any declaration of value pursuant to applicable clause of the Carrier's regular form of bill of lading must be made by the shipper in writing upon delivery of the goods to the carrier and inserted on the face hereof as well as on the bill of lading and extra freight paid if required."

Respondent issued a bill of lading for the merchandise. It contained a printed schedule of "Particulars" with headings identical to those of the dock receipt. Typed entries under the headings were similar to those written on the dock receipt. The "Marks and Numbers" were given as "1/9#," the "No. of Pkgs." as "9 Pallets," the "Description of Packages and Goods" as "T. V. Tuners" and the "Gross Weight Pounds" as "3420#."

Clause 24 of the bill of lading provided:

"24. In the event of any loss, damage or delay to or in connection with goods exceeding in actual value $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per customary freight unit, as the case may be, and the carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit, unless the nature and a higher value shall be declared by the shipper in writing before

shipment and inserted in this bill of lading.

\* \* \* \* \* \*

"It is agreed that the meaning of the word 'package' includes pieces and all articles of any description except goods shipped in bulk."

The shipper did not declare a higher value for the goods pursuant to this clause. The stipulation is silent as to freight rates, hence we do not know whether additional freight would have been charged if a higher value had been declared.

The invoice from the shipper to libellant described the goods as follows:

"Numbers on the packages: 1/9
Quantity: 9
Kind: Cardboard bundles
Quantity of Goods: 2160
Description:
    TV tuners. \* \* \* "

When the ship discharged its cargo at Rio de Janeiro, seven of the nine pallets were missing. They had been stolen. Since each pallet contained six cartons, 42 cartons in all were missing. The aggregate value of the tuners in the 42 cartons was $16,800.

After the loss was discovered, libellant wrote to respondent's agent complaining that "only 2 packages were discharged" out of "a shipment of 9 packages." In reply to this letter, respondent's agent described the shipment as "9 Pallets containing 54 cartons of television equipment. \* \* \* "

█ The legal issue here is different from that presented in cases dealing with a single large uncrated article, such as a tractor (Gulf Italia Company v. American Export Lines, Inc., 263 F.2d 135 (2d Cir. 1959), cert. denied, 360 U.S. 902, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959)), or a yacht (Pannell v. United States Lines Company, 263 F.2d 497 (2d Cir. 1959), cert. denied, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959)). *Gulf Italia* held

that the tractor was not a "package," hence the limitation of liability under the statute was to be determined by the method applicable to "goods not shipped in packages," i. e., "per customary freight unit." [1] The two methods of limiting liability, i. e., $500 "per package," or "per customary freight unit," are mutually exclusive. Mitsubishi International Corp. v. S.S. Palmetto State, 311 F.2d 382, 94. A.L.R.2d 1412 (2d Cir. 1962), cert. denied, 373 U.S. 922, 83 S.Ct. 1523, 10 L.Ed.2d 422 (1963).

Here we are not concerned with "customary freight units," for the parties agree that these goods were shipped in "packages." The question is, what was the package? Libellant claims that each carton was a package. Respondent asserts that the package was the pallet. On this precise issue, no decision directly in point has been found.

Black's Law Dictionary (4th ed. 1951) defines a package as:

"A bundle put up for transportation or commercial handling; a thing in form to become, as such, an article of merchandise or delivery from hand to hand. A parcel is a small package; 'parcel' being the diminutive of 'package'. Each of the words denotes a thing in form suitable for transportation or handling, or sale from hand to hand."

█ In my opinion, the pallet in this case comes within that definition. It was a "'bundle put up for transportation." It constituted an integrated unit, capable of, and intended for, handling as such. It is clear that in the dock receipt and in the bill of lading, the shipper and the carrier treated the pallet as the package. There is no mention of cartons in these documents. It is equally clear that in its own claim letter, libellant treated the pallet as the package. And if the definition in the bill of lading may be considered, i. e., "all articles of any description except goods shipped in bulk,"

---

1. *Pannell* approved the principle of *Gulf Italia* but held it inapplicable because in the *Pannell* case, the cargo was shipped on deck. Under these circumstances, the statute, by its terms, does not apply (46 U.S.C. § 1301(c)).

that definition reinforces the interpretation of the parties.

It has been said that the parties' characterization is immaterial, and that if an article is not a package, the parties cannot make it one by calling it a package. See Pannell v. United States Lines Company, supra.

However, as Judge Moore pointed out in his concurring opinion in *Pannell,* the statute does not define the word package, hence a definition in a bill of lading cannot properly be said to be repugnant to the statute. Moreover, apart from the printed bill of lading definition, and, apart from libellant's claim letter, the acts of the shipper and the carrier in specifying, both in the dock receipt and in the bill of lading, that the packages shipped consisted of nine pallets seem to me to be entitled to weight. The limitation of liability to $500 per pallet could have been avoided if the shipper had declared a higher value, which it failed to do. See Mitsubishi International Corp. v. S.S. Palmetto State, supra.

The case nearest to this on its facts is Middle East Agency, Inc. v. The John B. Waterman, 86 F.Supp. 487 (S.D.N.Y. 1949), in which machine components, some of which were boxed, and others of which were bolted to skids, were held to be packages. I doubt whether it can be said, as libellant urges, that this decision was overruled by *Gulf Italia* and *Pannell,* and in any event, there is more here than the mere bolting of an object to a skid. Each bundle in this case was in effect a container, with a wooden bottom and a wooden top, held together by tight metal bands. The walls of the outside cartons formed the sides of the bundle. If these walls had been covered with a layer of wood, we would have a complete box. Clearly, that would be a package, by any definition. The case is no different, in my view, merely because the shipper utilized the outer walls of the outside cartons to form the sides of the bundle. The bundle was a self-contained unit. The decision of this controversy should not turn upon whether the sides of the unit were made of separate pieces of wood or of the fibre sides of the outer cartons themselves. I hold that each pallet constituted a package within the meaning of 46 U.S.C. § 1304(5).

Respondent has paid to libellant $500 per pallet, i. e., $3,500 for the seven missing pallets, together with interest. Libellant's motion for summary judgment for an additional $13,300 is denied. Pursuant to the stipulation, respondent Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft is entitled to a decree dismissing the libel. The libel will also be dismissed, on consent, against respondent Columbus Lines, Inc.

Settle decree on notice.